Joseph M. Alioto (SBN 42680)
Theresa D. Moore (SBN 99978)
Thomas P. Pier (SBN 235740)
Jamie L. Miller (SBN 271452)
ALIOTO LAW FIRM
225 Bush Street, 16th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
Email: tpier@aliotolaw.com
Email: tmoore@aliotolaw.com
Email: jmiller@aliotolaw.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| Wayne Taleff, Katherine R. Arcell, Judy Bray, Jose' M. Brito, Jan Marie Brown, Robert D. Conway, Judy Crandell, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Ted Friedli, Donald V. Fry, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Lee M. Gentry, Jay Glikman, Valarie Ann Jolly, Gail S. Kosach, John Lovell, Michael Malaney, Len Marazzo, Lisa McCarthy, Michele McKechnie, Patricia Ann Meeuwsen, Cynthia Prosterman, Deborah M. Pulfer, Dana L. Robinson, Robert A. Rosenthal, Bill Rubinsohn, Sondra K. Russell, Sylvia N. Sparks, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Annette M. Tippetts, Diana Lynn Ultican, J. Michael Walker, Pamela S. Ward, David P. Wendell, Christine O. Whalen,<br><br>              Plaintiffs,<br><br>       v.<br><br>SOUTHWEST AIRLINES CO., GUADALUPE HOLDINGS CORP., AIRTRAN HOLDINGS, INC.,<br><br>         Defendants.<br>_____ | CASE NO.:<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AGAINST VIOLATIONS OF SECTION 7 OF THE CLAYTON ANTITRUST ACT** |

Plaintiffs are and will be direct purchasers of airline tickets for travel within the United States.  The plaintiffs bring this action under Section 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 18, 26, to enjoin and prohibit the merger of the defendants Southwest and AirTran.  Plaintiffs complain and allege as follows:

## INTRODUCTION

1.     On September 27, 2010, the defendants announced that they had agreed to combine in an all stock transaction, valued at more than $1.4 billion, merging Southwest Airlines Co. ("Southwest") and Southwest's wholly owned subsidiary Guadalupe Holdings Corp. ("Guadalupe"), with AirTran Airways ("AirTran"), eliminating the substantial competition between them.  It is proposed that the unlawful combine would operate under the Southwest name.

2.     "Low cost carriers" (LCCs) operate on a point-to-point basis and travel high density routes rather than to and from small communities.  The largest U.S. LCCs are Southwest Airlines, JetBlue, Spirit Airlines, Virgin Airlines, Allegiant, AirTran, Frontier, and Sun Country Airlines.  In contrast, "network carriers," operate on a "hub-and-spoke" business model.  There are six major U.S. network carriers:  United, Continental, American Airlines, Delta Airlines, U.S. Airways, and Alaska Airlines.

3.     Defendants Southwest and AirTran are both low cost carriers.

4.     The effect of the announced merger between Southwest and AirTran may be substantially to lessen competition, or to tend to create a monopoly, in the transportation of airline passengers in the United States and certain submarkets and in violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18.

5.     The probable and planned anticompetitive effects of this unlawful combination are increases in prices and fares, elimination and/or curtailment of services, elimination or curtailment of frequency of flights, curtailment of capacity of aircraft and available seats for passage, elimination of tens of thousands of jobs, the deterioration of quality of service, the addition of charges for amenities otherwise considered part and parcel of the service, the

elimination or substantial cutback of traffic to hubs, the creation of monopolies for passenger air traffic from and to major cities, and the encouragement and trend to further concentrate the industry toward ultimate monopoly.

6.     Plaintiffs are individuals who have purchased airline tickets for travel within the United States in the past, and expect to continue to do so in the future.  They are threatened with loss or damage by the defendants' merger in violation of Section 7 in the form of higher ticket prices and diminished service, and, accordingly, they bring this action for preliminary and permanent injunctive relief  against the merger pursuant to Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26.

## JURISDICTION

7.     This action is brought under Section 16 of the Clayton Antitrust Act, 15 U.S.C. §26, to prohibit the consummation and the effectuation of defendants' planned unlawful merger in violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. §18.  This Court has subject matter jurisdiction of the federal antitrust claims asserted in this action under Section 16 of the Clayton Antitrust Act, 15 U.S.C. §26, and Title 28 United States Code Sections 1331 and 1337.

## THE PARTIES

8.     Each of the plaintiffs named herein below is an individual and a citizen of the state listed as the address for each such plaintiff, and in the four years next prior to the filing of this action, each plaintiff has purchased airline tickets for travel within the United States, and each plaintiff expects to continue to purchase airline tickets for travel within the United States in the future:

Katherine R. Arcell, 4427 S. Miro St., New Orleans, LA 70125;

Judy Bray, 1126 Hill Circle, Colorado Springs, CO  80904;

Jose' M. Brito, 100 California Avenue, Reno NV  89509;

Jan Marie Brown, 975 Kennedy Dr., Carson City, NV, 89706;

Robert D. Conway, 6160 W Brooks Ave., Las Vegas, NV 89108;

1    Judy Crandell, 9135 Rain Dance Way, Reno, NV  89506;

2    Rosemary D'Augusta, 347 Madrone St., Millbrae, CA 94030;

3    Brenda K. Davis, 11022 Old Military Trail, Forney, TX, 75126;

4    Pamela Faust, 6227 Whileaway Dr., Loveland, Ohio  45140;

5    Carolyn Fjord, 4405 Putah Creek Road, Winters, CA 95694;

6    Don Freeland, 73801 White Sands Dr., Thousand Palms, CA 92276;

7    Ted Friedli, 50 Atlantic Ave., Long Branch, NJ 07740;

8    Donald V. Fry, 6740 Northrim Ln., Colorado Springs, CO  80919;

9    Gabriel Garavanian, 104 Sequoia Road, Tyngsboro, MA 01879;

10   Harry H. Garavanian, 14 Stavely Street, Lowell, MA 01852;

11   Yvonne Jocelyn Gardner, 10-Gold Coin Ct., Colorado Springs, CO 80919;

12   Lee M. Gentry, 7021 Forestview Dr., West Chester, OH 45069-3616;

13   Jay Glikman, 4265 Marina City Dr  #809, Marina del Rey, CA 90292;

14   Valarie Ann Jolly, 2121 Dogwood Loop, Mabank, TX 75156;

15   Gail S. Kosach, 4085 Ramrod Cir., Reno, NV 89519;

16   John Iverson Lovell, 2581 Knightsbridge SE, Grand Rapids, MI 49546;

17   Michael C. Malaney, 5395 Egypt Creek NE., Ada, MI 49301;

18   Len Marazzo, 1260 Springer Ct., Reno, NV 89511;

19   Lisa Ruth McCarthy, 35 Lancashire Place, Naples, FL 34104;

20   Michele McKechnie, 411 Westover Dr., Euless, TX  76039;

21   Patricia Ann Meeuwsen, 1062 Wedgewood, Plainwell, MI  49080;

22   Cynthia Prosterman, 527 20th Ave., San Francisco, CA 94121;

23   Deborah M. Pulfer, 16264 E. Mason Rd., Sidney, OH  45365;

24   Dana L. Robinson, 127B Palm Bay Terrace, Palm Beach Gardens, FL  33418;

25   Robert A. Rosenthal, 4659 Bridle Pass Drive, Colorado Springs, CO  80923;

26   Bill Rubinsohn, 261 Old York Road, Jenkintown, PA 19046;

27   Sondra K. Russell, 1206 N. Loop 340, Waco, TX 76705;

28   Sylvia N. Sparks, 3320 Conte Drive, Carson City, NV  89701;

1    June Stansbury, 363 Smithridge Park, Reno, NV 89502;

2    Clyde D. Stensrud, 1529 10th St W., Kirkland, WA 98033;

3    Wayne Taleff, 768 Farmsworth Ct., Cincinnati, OH 45255;

4    Gary Talewsky, 12 Courtland Dr., Sharon, MA 02067;

5    Annette M. Tippetts, 2783 East Canyon Crest Dr., Spanish Fork, Utah 84660;

6    Diana Lynn Ultican, 9039 NE Juanita Dr, #102, Kirkland, WA  98034;

7    J. Michael Walker, 11865 Heather Ln., Grass Valley, CA 95949;

8    Pamela S. Ward, 1322 Creekwood Dr., Garland, TX 75044;

9    David P. Wendell, 100 Vine St., Reno, NV  89503;

10   Christine O. Whalen, 1131 Pine St., New Orleans, L, 70118;

11       9.    Defendant Southwest Airlines Co. ("Southwest") is a corporation incorporated

12   under the laws of the State of Texas with its principal place of business in Dallas, Texas.

13       10.    As of September 30, 2010, Southwest was the largest air carrier in the United

14   States, as measured by the number of *domestic passengers carried*.

15       11.    Southwest had a market share of approximately 14.2% in 2010, the 2nd largest

16   domestic market share, as measured by *revenue passenger miles*.

17       12.    Southwest is engaged in the business of transporting passengers and cargo and

18   has approximately 35,000 full-time employees.

19       13.    Southwest uses the "Point to Point" flight routing system, serving 72 cities in 37

20   states, with more than 3,400 flights a day coast-to-coast.

21       14.    Defendant Guadalupe Acquisition Corp., ("Guadalupe") is a Nevada corporation

22   and wholly-owned subsidiary of Southwest.  Southwest and/or Guadalupe may be collectively

23   referred to herein as Southwest.

24       15.    Defendant AirTran Holdings, Inc. ("AirTran") is a corporation incorporated

25   under the laws of the State of Nevada with its principal place of business in Orlando, Florida.

26   AirTran through its wholly-owned subsidiary AirTran Airways, Inc., operates scheduled

27   airline service throughout the United States.

28

*First Amended Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

16. AirTran is the seventh largest domestic carrier, with more than 19.5 billion RPMs in 2010.

17. AirTran has more than 1,000 daily departures, primarily in the Eastern and Midwestern United States, serving over 70 destinations in the United States, Mexico, and the Caribbean.

18. AirTran employed approximately 8,300 employees as of February 25, 2011.

## NATURE OF TRADE AND COMMERCE

19. The relevant product and geographic markets for purposes of this action are the transportation of airline passengers in the United States. There are also submarkets, one of which is Low Cost Carriers ("LCCs") of airline passengers in the United States.

20. Southwest is by far the dominant carrier among LCCs in the United States and Airtran is their next rival among LCCs in the United States.

21. There is substantial concentration in both markets and a trend toward even further concentration and lessening of competition in the relevant markets.

22. Southwest and AirTran are substantial rivals and competitors in the relevant market.

23. Southwest and AirTran are substantial potential rivals and potential competitors in the relevant market.

24. Not only do Southwest and AirTran provide competing passenger service against each other on a number of passenger routes, but also they are potentially able to provide competing passenger service against each other on any route anywhere in the United States if they believe it would be profitable to do so.

25. Southwest has the capability to serve every major market in the United States.

26. AirTran has the capability to serve every major market in the United States.

27. The behavior of Southwest is constrained by the actual and potential competition from AirTran throughout the entire relevant market and submarkets.

28.    The behavior of AirTran is constrained by the actual and potential competition from Southwest throughout the entire relevant market and submarkets.

29.    The market for the transportation of airline passengers in the United States is in and part of interstate commerce, makes extensive use of the instrumentalities of interstate commerce, and substantially affects interstate commerce.  Airline passengers travel in a continuous and uninterrupted flow of interstate commerce.  Airline travel is a continuous and uninterrupted flow of interstate commerce.  Materials used in the construction of airplanes are purchased and shipped in a continuous and uninterrupted flow of interstate commerce.

30.    Any restraint of trade in the transportation of airline passengers in the United States, including the restraints specifically alleged in this complaint, directly and substantially restrains and affects interstate commerce.

## CONDUCT GIVING RISE TO VIOLATIONS OF LAW

31.    On September 27, 2010, Southwest and AirTran announced that they had entered into a definitive merger agreement for Southwest to acquire AirTran, in a deal valued at approximately $1.4 billion, or $3.4 billion including AirTran's debt and capitalized aircraft-operating leases.

32.    The new airline will operate under the Southwest name.

33.    The merging companies are AirTran and Guadalupe Holdings Corp., a Nevada corporation and wholly owned subsidiary of Southwest Airlines. Guadalupe will be merged into AirTran, which will then become a wholly owned subsidiary of Southwest Airlines.

34.    After the merger closes, AirTran will be merged into a new limited liability company set up as a Texas company, LLC Sub, which will become a wholly owned subsidiary of Southwest.

35.    The chief executive officer of the combined company will be Gary Kelly, the current chairman, president, and CEO of Southwest.

36.    Bob Fornaro, chairman, president, and CEO of defendant AirTran, will continue to be involved in the integration of the two companies.

37.   Through secret and private meetings, Mr. Kelly of Southwest met on more than one occasion with Mr. Fornaro of AirTran.

38.   One or more the secret and private meetings of Mr. Kelly and Mr. Fornaro were carried on outside of their offices, including hotels.

39.   At one or more of the secret and private meetings, Messrs. Kelly and Fornaro discussed the purposes and probable effects of the merger.

40.   At one or more of the secret and private meetings, Messrs. Kelly and Fornaro discussed airline fares in general and specifically.

41.   At one or more of the secret and private meetings, Messrs. Kelly and Fornaro discussed the frequency of flights.

42.   At one or more of the secret and private meetings, Messrs. Kelly and Fornaro discussed the elimination or curtailment of the use of hubs.

43.   At one or more of the secret and private meetings, Messrs. Kelly and Fornaro discussed the curtailment of capacity.

44.   At one or more of the secret and private meetings, Messrs. Kelly and Fornaro discussed the firing of employees.

45.   At one or more of the secret and private meetings, Messrs. Kelly and Fornaro discussed the type of aircraft to be eliminated.

46.   At one or more of the secret and private meetings, Messrs. Kelly and Fornaro discussed the charges for services previously given to passengers for free.

47.   At one or more of the secret and private meetings, Messrs. Kelly and Fornaro discussed the potential fare increases in the monopoly submarkets that would be created by the combine.

48.   At one or more of the secret and private meetings, Messrs. Kelly and Fornaro discussed the potential fare increases in the duopoly submarkets created by the combine.

49.   The combined company will carry over 113 million passengers per year, provide access to more than 106 destinations from coast to coast, Mexico and the Caribbean, with 685 all-Boeing aircraft, and employ approximately 43,000 employees.

1    50.    Defendants Southwest and AirTran are both low cost carriers ("LCCs").

2    51.    Only seven true low-cost carriers now compete in the U.S. market.

3    52.    Of the seven LCCs, Southwest is by far the dominant carrier, accounting for

4    approximately 60% of the combined market share of the *low-cost carriers* that report data to

5    the DOT.

6    53.    AirTran controls almost 15 percent of the LCC's combined market share of the

7    *low-cost carriers* that report data to the DOT.

8    54.    The combined company would account for approximately 75% of the combined

9    market share of the low cost carriers.

10   55.    Pre-merger, Southwest's *overall* domestic market share is approximately 14.2%.

11   56.    Pre-merger, AirTran's *overall* domestic market share is approximately 3.4%.

12   57.    Combined, Southwest and AirTran will have more than 98 billion RPMs.

13   Domestically, their combined market share as measured by RPM's would be 17.7%.

14   58.    If the merger is consummated, it will result in lower capacity; that is, fewer seats

15   in the sky, which, in turn, will result in higher ticket fares for consumers.

16   59.    Defendants' merger would take place in and further concentrate an already

17   highly concentrated market, characterized by mergers, including the most recent merger of

18   United and Continental Airlines in 2010, which made United the world's largest carrier.

19   60.    The top 9 competitors will have concentrated into 6 – controlling a full 90% of

20   the market – in just 24 months.  The recent United-Continental merger has further

21   concentrated the market with an acquisition of major participants: United was the third largest

22   airline in the United States measured by 2009 operating revenue, with 14.2% of the market,

23   while Continental was the fourth largest airline, with 10.7% of the market.  The combined

24   airline, with 25.0% share of the market, is now effectively the largest airline in the world,

25   along with Delta.

26   61.    In addition, defendants themselves are the products of mergers and acquisitions.

27   62.    In 1985, Southwest bought MuseAir, renamed it TranStar Airlines.

28

*First Amended Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

63.    In 1993, Southwest bought MorrisAir, a competing airline based on Salt Lake City, Utah; and in 2008, Southwest acquired assets from bankrupt ATA airlines.

57.    In 1997, ValuJet announced it would merge with the much smaller Airways Corporation, parent of AirTran Airways. The merged company would retain the AirTran name.

64.    Others mergers include that between Northwest and Republic Airlines in 1986, and between U.S. Airways and America West in 2005.

65.    According to Jeffrey Breen, President of Cambridge Aviation Research, "We find more airports and routes red-flagged in our analysis of this proposed merger than for United-Continental."

66.    A recent report by Cambridge Aviation Research on the Southwest-AirTran merger, red-flagged 33 routes, including 16 pushed into monopoly status as a result of the merger.

67.    Jeffrey Breen of Cambridge Aviation Research notes that, "We find the most cause for concern in Baltimore and Orlando which together account for more than 80% of passengers traveling along red-flagged routes."

68.    At the airport level, 18 U.S. airports are red-flagged for increases in market concentration exceeding DOJ guidelines. From most-affected to least: Baltimore (BWI), Chicago Midway (MDW), Orlando International (MCO), Houston Hobby (HOU), Tampa (TPA), Indianapolis (IND), Fort Meyers (RSW), Columbus (CMH), Buffalo (BUF), Milwaukee (MKE), Jacksonville (JAX), Fort Lauderdale (FLL), San Antonio (SAT), New Orleans (MSY), Kansas City (MCI), St. Louis (STL), Palm Beach (PBI), and Las Vegas (LAS).

69.    The new combined company's dominance at the airports listed above is substantially likely to result in higher fare prices for flights to or from those airports.

70.    Of the 33 routes red-flagged, 16 are pushed into monopoly status. The red-flagged route list includes the combined carrier's second-busiest route, Baltimore-Orlando,

*First Amended Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

whose one million annual passengers stand to lose airline choice as this proposed merger pushes the route into monopoly.

71.     Defendants have overlapping non-stop flights on 19 routes, including, Baltimore-Boston; Baltimore-Ft. Lauderdale; Baltimore-Indianapolis; Baltimore-Jacksonville; Baltimore-Orlando; Baltimore-Milwaukee; Baltimore-New Orleans; Baltimore-Tampa; Baltimore-Fort Myers, FL.; Chicago Midway-Fort Myers, FL.; Indianapolis-Tampa; Las Vegas-Milwaukee; Orlando-Buffalo, Orlando-Columbus, OH; Orlando-Indianapolis; Orlando-Chicago Midway; Orlando-Milwaukee; Orlando-Philadelphia; and Orlando-Pittsburgh.

72.     If the Southwest and AirTran combination were allowed, the airline would account for nearly 95 percent of available seat miles on offer at Chicago-Midway International Airport, 92 percent at Hobby Airport in Houston, and 70 percent of Baltimore/Washington International Airport.

73.     If the Southwest and AirTran combination were allowed, the merger will reduce the number of competitors in 127 nonstop and connecting markets and will reduce the number of competitors from two to one in 14 nonstop and connecting markets.

74.     Defendant Southwest says it intends an "orderly and reasonable schedule" for ending flights at Dallas/Fort Worth International following the carriers' merger.

75.     Former U.S. Rep. Jim Oberstar, Chairman of the House Transportation and Infrastructure Committee from 2007 until 2011, has stated that, "The future of competition among airlines at every level of the industry, legacy and low-cost alike, is at stake in the Southwest-AirTran merger."

76.     Defendants compete now on hundreds of domestic connecting routes, where competition will be reduced or eliminated as a result of defendants' merger.

77.     The potential for increased collusion among the remaining airlines is significant, because the domestic passenger airlines, including, *inter alia*, these defendants, have in the past colluded to fix prices with regard to airfares, surcharges, and cargo prices, and to fix other terms and conditions of air transportation and travel.

78.     In addition to the degree of market concentration, there are significant barriers to entry in the relevant market, as well as a history of a lack of successful new entry.  The relevant market has been characterized by the exit, rather than the entry, of firms.  The prospect of new entry is therefore unlikely to eliminate any of the anticompetitive effects that will eventuate from the defendants' merger and the increasingly concentrated structure of the relevant market.

79.     The defendants' proposed merger will cause harm to consumers, including the plaintiffs, by generating higher airfares, by reducing the number of flights on particular routes, and by eliminating air service to smaller communities.  Consumers, including the plaintiffs, will thus pay more for less airline service than would be the case in the absence of defendants' merger.

80.     The defendants' proposed merger is also likely to lead to other mergers and further concentration in the already highly concentrated relevant market.  American Airlines, which until the Delta-Northwest merger was the largest domestic airline, will likely combine with another carrier, like U.S. Airways, the only remaining medium-sized carrier.  Both of the CEO's of American and U.S. Airways have already indicated publicly of their approval of the elimination of capacity and of their desire to further concentrate the industry and eliminate even more capacity, with the obvious result of higher fares.

81.     There are 29 major airports in the United States, located in the following cities: Atlanta, Baltimore, Boston, Charlotte, Chicago, Dallas, Denver, Detroit, Fort Lauderdale, Houston, Las Vegas, Los Angeles, Miami, Minneapolis, New York, Newark, Orlando, Philadelphia, Phoenix, Portland, Salt Lake City, San Diego, San Francisco, Seattle, Tampa, and Washington D.C.

82.     Each major U.S. passenger airline, including LCC defendants Southwest and AirTran, has the ability and financial capacity to offer competitive flights between any two major cities in the United States, whether or not they are currently offering such flights.

83.     Each major U.S. passenger airline, including LCC defendants Southwest and AirTran, has the ability and financial capacity to establish a competitive presence in any of the

1    major airports located throughout the United States by, inter alia, leasing or otherwise utilizing

2    terminal slots, hiring employees, and directing more flights to and from the given airport.

3        84.    Since the LCCs and major airlines already offer flights to and from various

4    major U.S. cities, each such airline, including defendants Southwest and AirTran necessarily

5    has the managerial expertise to offer similar flights between any two major cities in the United

6    States.

7        85.    The major U.S. passenger airlines, including LCC defendants Southwest and

8    AirTran, frequently trade, sell, lease or purchase slots from other airlines in each of the major

9    29 airports throughout the United States.

10       86.    The LCCs and major U.S. passenger airlines with significant market share in

11   specific regions or major airports, including defendants Southwest and AirTran, endeavor to

12   keep other LCCs and major airlines from entering the market with competitive flights.

13       87.    On information and belief, each of the LCCs and major U.S. passenger airlines,

14   including defendants Southwest and AirTran, has created internal documents reflecting a

15   financial and economic cost/benefit analysis of increasing its presence in each or many of the

16   major U.S. airports.

17       88.    On information and belief, each of the LCCs and major U.S. passenger airlines,

18   including defendants Southwest and AirTran, has created internal documents reflecting its

19   analysis of how the market for air transportation would be impacted within each regional

20   market or major U.S. airport by the entry of another LCC or major U.S. passenger airline into

21   that region or major airport.

22       89.    The entry of Southwest or AirTran into regions or major airports that are

23   dominated, controlled, or serviced by other LCCs or major passenger airlines would result in

24   lower prices, increased service levels, and/or other pro-competitive effects on flights within

25   the region to or from the given major airport.

26       90.    As the foregoing paragraphs show, the effect of the defendants' merger, if

27   consummated, may be substantially to lessen competition, or to tend to create a monopoly in

28   the relevant markets.

*First Amended Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

91.     By reason of the defendants' proposed merger, the plaintiffs are threatened with loss or damage in the form of higher ticket prices and diminished service.  If the defendants' merger is consummated, the plaintiffs will sustain irreparable harm for which damages will be unable to compensate plaintiffs, in that service once lost cannot easily be restored. Accordingly, plaintiffs bring this action for both preliminary and permanent injunctive relief against defendants' merger.

### VIOLATION ALLEGED

### Clayton Act, Section 7

92.     The conduct of defendants described hereinabove, specifically their agreement to merge, constitutes a violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18, in that the effect of the proposed merger of defendants may be substantially to lessen competition, or to tend to create a monopoly in the transportation of airline passengers in the United States and the transportation of airline passengers to and from the United States on international flights; by reason of which violation the plaintiffs are threatened with loss or damage in the form of higher ticket prices and diminished service, as well as irreparable harm for which damages will be inadequate to compensate plaintiffs, such that plaintiffs are entitled to bring suit under Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, to obtain preliminary and permanent injunctive relief against defendants' merger, and to recover their cost of suit, including a reasonable attorney's fee.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand the following relief from this Honorable Court:

A.      Declaring, finding, adjudging, and decreeing that the agreement of the defendants to merge violates Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18.

B.      Preliminarily enjoining the defendants from consummating their merger during the pendency of this action.

C.      Permanently enjoining the defendants from consummating their merger.

D.      If defendants have closed, completed, or consummated their merger, require defendants to hold their assets separate and apart and/or order divestiture.

1    E.    Awarding to plaintiffs their cost of suit, including a reasonable attorney's fee,

2    as provided by Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26.

3    F.    Granting to plaintiffs such other and further relief to which they may be entitled

4    and which the Court finds to be just and appropriate.

5

6    Dated:  May 20, 2011

7    ALIOTO LAW FIRM

8

9    By:    /s/ Joseph M. Alioto

10    Joseph M. Alioto
      ALIOTO LAW FIRM
11    225 Bush Street, 16th Floor
      San Francisco, CA  94104
12    Telephone:  (415) 434-8900
      Facsimile:  (415) 434-9200
13    Email:  jmalioto@aliotolaw.com
      Email:  tpier@aliotolaw.com
14    E-mail:  tmoore@aliotolaw.com
      E-mail:  jmiller@aliotolaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*First Amended Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

1

## <u>CERTIFICATE OF SERVICE</u>

2

Jamie L. Miller hereby declares:

3

I am employed in the City and County of San Francisco, California.  I am over the age

4

of 18 years and am not a party to the case herein.  My business address is 225 Bush Street, 16th

5

Floor, San Francisco, California 94104.

6

On May 20, 2011, I served the attached document entitled:

7

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AGAINST
VIOLATIONS OF SECTION 7 OF THE CLAYTON ANTITRUST ACT**

8

9

I served this document on the following parties via First-Class U.S. mail by placing a

10

true and correct copy in a sealed envelope with first-class postage thereon fully prepaid and

11

deposited for pick-up by United States Postal Service addressed as follows:

12

13

*Counsel for Defendants Southwest Airlines Co., Guadalupe Holdings Corp.,
and AirTran Holdings, Inc.*

14

15

16

17

18

| | |
|---|---|
| **Steven Sunshine**<br>**Sara Bensley**<br>Skadden, Arps, Slate, Meagher &<br>Flom, LLP<br>1440 New York Avenue, N.W.<br>Washington, D.C.  20005-2111 | Steven.Sunshine@skadden.com<br>Sara.Bensley@skadden.com<br>Phone:  202.371.7032<br>Phone:  202-371-7860<br>Fax:  202-661-8321 |
| **Allen Ruby**<br>Skadden, Arps, Slate, Meagher &<br>Flom, LLP<br>525 University Avenue, Ste 1100<br>Palo Alto, CA  94301 | allen.ruby@skadden.com<br>Phone:  650-470-4500<br>Fax: 650.798.6585 |

19

20

21

22

23

I also served the above document on the parties by email transmission by emailing to

24

the above-referenced email addresses.

25

I declare under penalty of perjury under the laws of the State of California that the

26

foregoing is true and correct and this declaration was executed this 20th day of May, 2011.

27

28

*/s/ Jamie L. Miller*
Jamie L. Miller