IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Wayne Taleff, et al., | NO. C 11-02179 JW |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| Southwest Airlines Co., et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs[1] bring this action against Southwest Airlines Co. ("Southwest"), Guadalupe Acquisition Corp. and AirTran Holdings, Inc. ("AirTran") (collectively, "Defendants"),[2] alleging an unlawful merger in violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18. Plaintiffs allege that the "proposed merger" of Defendants Southwest and AirTran will substantially lessen competition or tend to create a monopoly in the airline industry.

---

[1] Plaintiffs are Wayne Taleff, Katherine R. Arcell, Judy Bray, Jose M. Brito, Jan Marie Brown, Robert D. Conway, Judy Cranwell, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Ted Friedli, Donald V. Fry, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Lee M. Gentry, Jay Glikman, Valarie Ann Jolly, Gail S. Kosach, John Lovell, Michael Malaney, Len Marazzo, Lisa McCarthy, Michele McKechnie, Patricia Ann Meeuwsen, Cynthis Prosterman, Deborah M. Pulfer, Dana L. Robinson, Robert A. Rosenthal, Bill Rubinsohn, Sondra K. Russell, Sylvia N. Sparks, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Annette M. Tippetts, Diana Lynn Ultican, J. Michael Walker, Pamela S. Ward, David P. Wendell and Christine O. Whalen.

[2] On May 2, 2011, Defendant AirTran was acquired by Defendant Southwest. (See Order Denying Plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order at 1, hereafter, "May 4 Order," Docket Item No. 11.)

Presently before the Court is Defendants' Motion to Dismiss.[3] The Court conducted a hearing on November 3, 2011. Based on the papers submitted to date and oral argument, the Court GRANTS Defendants' Motion to Dismiss.

## II. BACKGROUND

**A.   Factual Background**

In a First Amended Complaint[4] filed on May 20, 2011, Plaintiffs allege as follows:

Plaintiffs are individuals who have purchased airline tickets for travel within the United States in the past, and who expect to continue to do so in the future. (FAC ¶ 6.) Defendant Southwest is a corporation incorporated under the laws of the State of Texas, with its principal place of business in Dallas, Texas. (Id. ¶ 9.) Defendant Guadalupe Acquisition Corp. is a Nevada corporation which is a wholly owned subsidiary of Defendant Southwest. (Id. ¶ 14.) Defendant AirTran is a corporation incorporated under the laws of the State of Nevada, with its principal place of business in Orlando, Florida. (Id. ¶ 15.) As of 2010, Defendant Southwest was the largest air carrier in the United States as measured by the number of domestic passengers carried. (Id. ¶ 10.) As of 2010, Defendant AirTran was the seventh-largest domestic air carrier. (Id. ¶ 16.) Defendants Southwest and AirTran are both "low cost carriers" ("LCCs"). (Id. ¶ 50.) As of 2010, only seven true LCCs compete in the U.S. market. (Id. ¶ 51.)

On September 27, 2010, Defendants Southwest and AirTran announced that they had entered into a merger agreement whereby Defendant Southwest would acquire Defendant AirTran in a deal valued at approximately $1.4 billion. (FAC ¶ 31.) The combined company would account for approximately 75% of the combined market share for LCCs, while it would account for 17.7% of the overall domestic market share for air carriers. (Id. ¶¶ 54,

---

[3] (Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiffs' Complaint, hereafter, "Motion," Docket Item No. 34.)

[4] (First Amended Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act, hereafter, "FAC," Docket Item No. 17.)

2

57.) Defendants' merger will result in lower capacity in the form of "fewer seats in the sky," which in turn will result in higher ticket prices and diminished service for consumers. (Id. ¶¶ 58, 91.) Defendants' merger will also cause harm to consumers, including Plaintiffs, by reducing the number of flights on particular routes and by eliminating air service to smaller communities, which will cause consumers to "pay more for less airline service" than would be the case if the merger did not take place. (Id. ¶ 79.) Thus, if the merger is consummated, Plaintiffs will sustain irreparable harm for which damages will be unable to compensate them, in that service once lost cannot easily be restored. (Id. ¶ 91.)

On the basis of the allegations outlined above, Plaintiffs allege a single cause of action for violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18.

**B.  Procedural History**

On May 2, 2011, Defendant Southwest acquired Defendant AirTran. (See May 4 Order at 1.) On May 3, 2011, Plaintiffs filed suit to "enjoin and prohibit the merger" of Defendants Southwest and AirTran. (See Docket Item No. 1.) On the same day, Plaintiffs also moved for a Temporary Restraining Order to enjoin Defendants from "completing and consummating" the merger. (See Docket Item No. 8.) On May 4, 2011, the Court denied Plaintiffs' request for a Temporary Restraining Order on the grounds, *inter alia*, that "Defendants' acquisition of [Defendant AirTran] was completed the day before this action was filed." (See May 4 Order at 2.) On May 9, 2011, Plaintiffs appealed the Court's denial of their request for a Temporary Restraining Order to the Ninth Circuit. (See Docket Item No. 12.) On May 20, 2011, Plaintiffs filed their First Amended Complaint. (See Docket Item No. 17.) On June 13, 2011, the Ninth Circuit dismissed Plaintiffs' appeal for lack of jurisdiction. (See Docket Item No. 24.)

Presently before the Court is Defendants' Motion to Dismiss.

### III.  STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient

3

facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

## IV. DISCUSSION

Defendants move to dismiss the First Amended Complaint on the grounds that: (1) Plaintiffs have failed to state a claim under Section 7 of the Clayton Antitrust Act, because Plaintiffs have failed to allege a plausible relevant product market; and (2) Plaintiffs have failed to allege facts sufficient to demonstrate that they are entitled to injunctive relief. (Motion at 1-17.) Plaintiffs respond that: (1) they have alleged that a "Low Cost Carrier" submarket of the airline industry exists, which is a plausible relevant product market for purposes of the Clayton Act; and (2) they

have demonstrated that they are entitled to injunctive relief.[5] The Court first considers the issue of whether Plaintiffs are entitled to injunctive relief, as it may be dispositive.

Injunctive relief is appropriate when a party demonstrates "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." N. Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir. 2007) (citation omitted). To qualify for injunctive relief, the burden is on the plaintiffs to establish that the balance of equities tips in their favor. See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138 (9th Cir. 2009).

Divestiture is one of the forms of injunctive relief available under the Clayton Act. California v. Am. Stores Co., 495 U.S. 271, 280-81 (1990). A private plaintiff may "maintain an antitrust divestiture suit" under the Clayton Act. See Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc., 140 F.3d 1228, 1234 (9th Cir. 1998). However, "[h]ypothetical anticompetitive conduct, speculative monopoly power, and remote injuries do not merit the extreme remedy of divestiture." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 322 (3d Cir. 2007).

Here, the only relief requested in Plaintiffs' First Amended Complaint is injunctive relief in the form of: (1) an injunction preventing Defendants from consummating their merger; and (2) an order of divestiture, "[i]f [Defendants] have closed, completed, or consummated their merger." (See FAC, Prayer for Relief.) As discussed above, however, Plaintiffs filed this suit after Defendants had already consummated their merger. Thus, the only form of relief that is possibly available to

---

[5] (Plaintiffs' Opposition to Defendants' Motion to Dismiss Complaint and Opposition to Defendants' Request for Judicial Notice at 1-15, hereafter, "Opp'n," Docket Item No. 40.)

5

Plaintiffs is an order of divestiture.[6] Accordingly, the Court considers whether Plaintiffs have demonstrated that an order of divestiture is appropriate in this case.

In support of their contention that an order of divestiture is appropriate, Plaintiffs contend as follows:

> Plaintiffs have suffered irreparable injury by the elimination of a significant rival in the Low Cost Carrier market. . . . Moreover, the remedies available at law, such as monetary damages, are inadequate to compensate for the intangibles such as capacity of aircraft, availability of flights and locations and services, including the price of tickets. The balance of the hardships is likewise clear because the public interest is always served by the competition of two significant rivals offering not only different prices but different services, different availabilities, different routes, different capacities, different aircraft, and innovation.

(Opp'n at 1, 3.)

Upon review, the Court does not find that Plaintiffs have demonstrated that they are entitled to the "extreme remedy of divestiture." Qualcomm Inc., 501 F.3d at 322. First, the Court finds that Plaintiffs have not demonstrated that the remedies available at law, such as monetary damages, would be inadequate. In fact, the harm which Plaintiffs allege will ensue from the merger is expressed in terms of monetary damages.[7] Second, the Court finds that Plaintiffs' conclusory assertion that the "balance of hardships is . . . clear" does not constitute a "demonstration" that the remedy of divestiture is warranted, considering the balance of hardships between Plaintiffs and

---

[6] Prior to 1990, Ninth Circuit caselaw held that divestiture was not an available remedy in private actions brought under the Clayton Act. See Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp., 518 F.2d 913, 920-25 (9th Cir. 1975). In 1990, however, the Supreme Court interpreted the language of the Clayton Act "to authorize a private divestiture remedy when appropriate in light of equitable principles." Am. Stores, 495 U.S. at 285. However, the Supreme Court emphasized that its "conclusion that a district court has the power to order divestiture in appropriate cases brought [under the Clayton Act] does not, of course, mean that such power should be exercised in every situation in which the [government] would be entitled to such relief." Id. at 295. Further, the Court stated that "equitable defenses such as laches . . . may protect consummated transactions from belated attacks by private parties when it would not be too late for the [government] to vindicate the public interest." Id. at 296.

[7] (See, e.g., FAC ¶ 91 (alleging that Plaintiffs are threatened with "loss or damage in the form of *higher ticket prices* and diminished service"); id. ¶ 79 (alleging that Plaintiffs are threatened by damage in the form of "diminished service" because they will "*pay more* for less airline service than would be the case in the absence" of the merger) (emphases added).)

United States District Court
For the Northern District of California

1 Defendants.[8]  Finally, the Court finds that Plaintiffs' blanket contention that the public interest "is
2 always served by the competition of two significant rivals" does not constitute a "demonstration"
3 that the public interest "would not be disserved" by an order of divestiture in this case in particular.
4 See Norton, 503 F.3d at 843.  Thus, the Court finds that Plaintiffs have failed to meet their burden of
5 demonstrating that the balance of equities tips in their favor, which means that Plaintiffs have failed
6 to show that they qualify for injunctive relief.  Selecky, 586 F.3d at 1138.

7 Moreover, the Court finds that because Plaintiffs delayed in filing their suit until after
8 Defendants' merger had already been consummated, the remedy of divestiture is now unavailable to
9 Plaintiffs.  A similar conclusion has been reached by other courts that have considered lawsuits
10 brought by private plaintiffs who: (1) sought divestiture of companies that had already combined
11 their operations as the result of a merger, where (2) the plaintiffs' delay in filing suit meant that the
12 court, if it were to order a divestiture, would have to compel defendants that had already integrated
13 their operations to separate themselves into two distinct companies.[9]  In Ginsburg, for example, the
14 Eighth Circuit considered a lawsuit brought by private plaintiffs who waited "nearly two months
15 after [the defendants] announced their agreement to merge before filing [their] lawsuit."  Ginsburg,
16 623 F.3d at 1235.  In considering whether divestiture was available as a remedy, the court explained
17 that "divestiture has been considered the most important antitrust remedy because '[i]t is simple,
18 relatively easy to administer, and sure.'"  Id. at 1234 (citing Am. Stores, 495 U.S. at 281).  However,
19 as the court went on to explain, "this is only true before the transaction is consummated, or if stock

---

[8] Defendants contend that the balance of hardships "tilts heavily in favor of Defendants." (Motion at 13.)  In support of this proposition, Defendants contend that the hardship for Defendants would be extreme, arguing that "a divestiture would be extremely difficult to accomplish *at all*, given that the merger has already closed, AirTran no longer exists as a separate entity, and Southwest and AirTran operations, finances, and personnel have already been substantially integrated."  (Id. (emphasis in original).)  By contrast, Defendants contend, it is wholly speculative what harm, if any, Plaintiffs would suffer if divestiture is not ordered, given that Plaintiffs do not allege "how often [they] use air travel" or how "their plans for the future . . . conceivably could be affected by the merger."  (Id. at 14.)

[9] See, e.g., Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1235-36 (8th Cir. 2010); Antoine L. Garabet, M.D., Inc. v. Autonomous Tech. Corp., 116 F. Supp. 2d 1159, 1173 (C.D. Cal. 2000).

7

1 or discrete tangible assets are all that later need be divested." Id. By contrast, in the case before it,
2 the court noted that the defendants had already "combined their sizeable operations and today
3 function as one corporate entity." Id. at 1235. Thus, the court found that there would be "obvious
4 hardship" for the defendants, their employees, and their customers if the court were to order a
5 "forced divestiture," whereas the benefit to competition of a divestiture could only be speculative.
6 Id. at 1235-36. Accordingly, given the fact that the defendants had already consummated their
7 merger and combined their operations into a single corporate entity, the court concluded that the
8 "remedial equities balance[d] overwhelmingly in favor of denying" the remedy of divestiture.[10] Id.
9 at 1236.

10 Likewise, in Garabet the Central District of California considered a lawsuit brought by
11 private plaintiffs who waited to file suit until the day on which the merger of two corporations was
12 consummated. Garabet, 116 F. Supp. 2d at 1163, 1173. The court explained that the plaintiffs'
13 delay in bringing their suit "makes [the remedy of divestiture] unavailable." Id. at 1171. In
14 reaching this conclusion, the court explained that divestiture is "a fairly extraordinary remedy" that
15 should not be ordered by a court "without substantial evidence that the benefit outweighs the harm."
16 Id. at 1172. The court considered the "costs and complexities of unwinding [the] merger," and
17 observed that the defendants had already spent $45 million "on integrating [their] two companies."
18 Id. at 1173. Thus, the court concluded that it was clear that the defendants "would suffer serious
19 prejudice and hardship as a result of divestiture," while it was "not clear what *direct* benefit [the

---

[10] In Ginsburg, the Eighth Circuit observed that the plaintiffs had moved for, but failed to obtain, a preliminary injunction from the district court. Id. at 1235. The court noted that if the plaintiffs had been granted a preliminary injunction forestalling the merger, the remedy of divestiture would have been relatively "easy to administer." Id. However, because the plaintiffs failed to obtain a preliminary injunction, the merger had been consummated and the defendant corporations had combined their operations, which meant that divestiture would be extremely difficult to implement. Id. The court concluded that the plaintiffs' "failure to obtain a preliminary injunction . . . must be taken into account in fashioning an appropriate remedy." Id. In this case, similarly, Plaintiffs moved for, but failed to obtain, a preliminary injunction from this Court. (See May 4 Order.)

8

plaintiffs] would gain from the break-up of these two companies." Id. (emphasis in original). Therefore, the court concluded that divestiture was "barred as a matter of law."[11] Id.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss on the ground that Plaintiffs have failed to demonstrate that they are entitled to the injunctive relief they request.[12]

## V.  CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss.

Because the only possible form of relief requested by, and available to, Plaintiffs is an order of divestiture, and because the Court has found that Plaintiffs are not entitled to an order of divestiture, the Court finds that further amendment would be futile. Accordingly, the Amended Complaint is dismissed with prejudice.

Dated:  November 30, 2011

JAMES WARE
United States District Chief Judge

---

[11] Indeed, one court has asserted that "[p]otentially disruptive remedies such as divestiture of completed transactions involving integration of ongoing business activities have never been granted in private suits under Section 7." Glendora v. Gannett Co. Inc., 858 F. Supp. 369, 372 (S.D.N.Y. 1994). Plaintiffs have not cited any case in which a federal court has ordered divestiture of a completed merger involving the integration of ongoing business activities in a suit brought by private plaintiffs under Section 7 of the Clayton Act; nor is the Court aware of any such cases.

[12] Thus, the Court does not reach the issue of whether Plaintiffs allege a plausible relevant product market for purposes of Section 7 of the Clayton Act.

9

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Allen Ruby Allen.Ruby@Skadden.com
Gary A. MacDonald gary.macdonald@skadden.com
Jamie L. Miller jmiller@aliotolaw.com
Joseph M. Alioto jmalioto@aliotolaw.com
Sara L. Bensley sara.bensley@skadden.com
Steven C. Sunshine Steven.Sunshine@skadden.com
Theresa Driscoll Moore Tmoore@aliotolaw.com
Thomas Paul Pier tpier@aliotolaw.com

**Dated:  November 30, 2011**              **Richard W. Wieking, Clerk**

                                          **By:     /s/ JW Chambers**
                                               **Susan Imbriani**
                                             **Courtroom Deputy**